**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 22-cv-00167-CMA-STV

LAQUITA JONES,
LATEESHA PROCTOR,
PATRICK SMITH, and
BEN MCCOLLUM,

       Plaintiffs,

v.

DISH NETWORK CORPORATION,
THE BOARD OF DIRECTORS OF DISH NETWORK CORPORATION,
RETIREMENT PLAN COMMITTEE OF DISH NETWORK CORPORATION, and
DOES NO. 1–20,

       Defendants.

---

**ORDER AFFIRMING AND ADOPTING RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE**

---

       This matter is before the Court on the January 31, 2023 Recommendation of

United States Magistrate Judge (Doc. # 72), wherein Judge Scott T. Varholak

recommends this Court grant Defendants' Motion to Dismiss (Doc. # 30) pursuant to

Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiffs timely filed an Objection to the

Recommendation. (Doc. # 73.) For the following reasons, the Court overrules Plaintiffs'

Objection, affirms and adopts the Recommendation as an Order of this Court, and

grants Defendants' Motion to Dismiss.

# I.   <u>BACKGROUND</u>

The factual background of this case is set out at length in Judge Varholak's Recommendation, which the Court incorporates herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, the Court will provide only a brief summary of the case.

This putative class action arises under the Employment Retirement Income Security Act of 1974 ("ERISA"). (Doc. # 1.) Defendants are administrators and fiduciaries of the DISH Network Corporation 401(k) Plan ("Plan"). (*Id.* at ¶ 5.) Plaintiffs, who are former DISH Network Corporation employees and Plan participants, seek to certify a class for a period beginning six years before the filing of this action, on January 20, 2016, and extending until the date of judgment. (*Id.* at ¶ 1.)

As of December 31, 2020, the Plan had 18,808 participants with account balances and assets totaling approximately $841 million. (*Id.* at ¶ 4.) The Plan is a "participant-directed" 401(k) plan in which participants direct the investment of their contributions into various investment options offered by the Plan. (*Id.* at ¶ 21.) Defendants are responsible for selecting, monitoring, and retaining the service providers that provide investment, recordkeeping, and other administrative services. (*Id.* at ¶ 5.) The available investment options for participants of the Plan include various mutual funds, DISH common stock, and EchoStar Corporation common stock. (*Id.* at ¶ 21.) In this case, Plaintiffs challenge two of the investment options offered by the Plan: the Fidelity Freedom fund target date suite ("Active Suite") and the Royce Total Return Fund Institutional Class ("Royce Fund"). (*Id.* at ¶¶ 60–81, ¶¶ 83–84.) Plaintiffs allege

that Defendants breached their fiduciary duties by allowing unreasonable expenses to be charged to participants and by selecting, retaining, and/or otherwise ratifying high-cost and poorly performing investments, such as the Active Suite and the Royce Fund, instead of offering more prudent alternative investments. (*Id.* at ¶ 6.)

Plaintiffs initiated this lawsuit on January 20, 2022. The Complaint asserts three causes of action: (1) breach of fiduciary duty under ERISA, 29 U.S.C. § 1104(a)(1)(A), (B), and (D); (2) failure to monitor fiduciaries and co-fiduciary breach; and (3) in the alternative, knowing breach of trust. (Doc. # 1 at ¶¶ 104–20.) On April 18, 2022, Defendants filed the instant Motion to Dismiss the Complaint for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. # 30.) This Court referred the Motion to Judge Varholak (Doc. # 33), who issued the instant Recommendation on January 31, 2023 (Doc. # 72).

In his Recommendation, Judge Varholak first determined that Plaintiffs have standing to assert their claims that Defendants breached their fiduciary duties with respect to the Plan's allegedly excessive recordkeeping and administrative ("RK&A") fees and Defendants' allegedly imprudent retention of the Active Suite. (Doc. # 72 at 14, 17.) However, Judge Varholak determined that Plaintiffs do not have standing for their breach of fiduciary duty claim relating to the Royce Fund because the allegations do not demonstrate that any of the Plaintiffs invested in the Royce Fund or otherwise suffered a concrete injury traceable to Defendants' retention and monitoring of the Royce Fund. (*Id.* at 18.)

Moving to the merits, Judge Varholak found that the Complaint failed to plausibly allege a breach of fiduciary duty claim relating to RK&A fees because Plaintiffs did not provide an apt comparison demonstrating that the RK&A fees for the Plan were unreasonable compared to the fees of other plans. (*Id.* at 21–22.) Next, Judge Varholak found that the Complaint failed to plausibly allege an imprudence claim relating to the Active Suite because Plaintiffs made no direct allegations regarding Defendants' process for selecting and retaining Plan options and the circumstantial allegations failed to show that no reasonable fiduciary would have retained the Active Suite. (*Id.* at 34.) For example, Plaintiffs failed to adequately compare the Active Suite to a meaningful benchmark or sufficiently allege other facts that would allow a court to reasonably infer that the retention of the Active Suite was the result of an imprudent monitoring process. (*Id.*) Judge Varholak next found that the Complaint failed to state a claim for breach of the duty of loyalty because it contained no factual allegations that Defendants acted for the purpose of benefitting themselves or Fidelity. (*Id.* at 35.) Lastly, Judge Varholak determined that because the Complaint failed to state a claim for breach of fiduciary duty, Plaintiffs' claims for failure to monitor fiduciaries, co-fiduciary liability, and knowing breach of trust are also subject to dismissal because they are derivative of the breach of fiduciary duty claim. (*Id.* at 36.)

Ultimately, Judge Varholak recommended that this Court grant Defendants' Motion to Dismiss (Doc. # 30) and dismiss the Complaint without prejudice with leave to amend. Plaintiffs timely filed an Objection to the Recommendation (Doc. # 73), and Defendants filed a Response (Doc. # 75). The matter is now ripe for review.

## II.   LEGAL STANDARDS

### A.   REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." In conducting the review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "In the absence of timely objection, the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.")).

### B.   FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject matter jurisdiction." A Rule 12(b)(1) challenge generally takes one of two forms: (1) a facial attack, where the moving party may "attack the complaint's allegations as to the existence of subject matter jurisdiction"; or (2) a factual attack, where the moving party may "go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).

When reviewing a facial attack, as in the instant case, the Court must accept the allegations in the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

## C.    FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor

6

does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted).

### III.   <u>DISCUSSION</u>

Plaintiffs object to the Recommendation's analysis and conclusions with respect to: (1) Plaintiffs' constitutional standing to challenge the Royce Fund; (2) Plaintiffs' claim that Defendants caused the Plan to pay excessive RK&A fees; (3) Plaintiffs' claim that Defendants' investment monitoring process was deficient regarding the Active Suite; (4) Plaintiffs' claim that Defendants breached their duty of loyalty; and (5) Plaintiffs' claims that Defendants failed to monitor their co-fiduciaries and knowingly participated in breaches of trust ("Derivative Claims"). (Doc. # 73 at 2–3.) The Court will address each objection in turn.

### A.   STANDING TO CHALLENGE ROYCE FUND

"To bring a suit under ERISA, a plaintiff must show both constitutional standing and a cause of action (statutory standing) under the ERISA statute." *Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1192 (D. Colo. 2021); *see also Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020) ("There is no ERISA exception to Article III."). To establish constitutional standing, a plaintiff must plausibly allege "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole*, 140 S. Ct. at 1618. Plaintiffs must demonstrate standing separately for each claim they assert. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Although there is no Tenth Circuit authority directly on point, several courts in this district and in other circuits have analyzed whether a plaintiff has standing to bring claims related to ERISA plan options in which he or she did not invest. The majority of courts have held that Article III does not prevent named plaintiffs in a class action suit "from representing parties who invested in funds that were allegedly imprudent **due to the same decisions or courses of conduct**," even if the named plaintiffs did not invest in those funds. *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 132 (3d Cir. 2022) (emphasis added); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) (noting that a plaintiff who has adequately alleged injury in fact may seek relief on behalf of the plan or other participants that "sweeps beyond his own injury"). Critically, in those cases, the plaintiff alleged "mismanagement of the entire Plan and all of its funds through the options it provided, not breach related to an individual fund or funds." *Kurtz*, 511 F. Supp. 3d at 1193 (collecting cases); *see also Barrett v. Pioneer Nat. Res. USA, Inc.*, No. 17-cv-1579-WJM-NYW, 2018 WL 3209108, at *4 (D. Colo. June 29, 2018) (noting that "although plaintiffs are sometimes granted standing to assert the rights of parties not before the court, these cases inevitably involve a single practice by the defendant that injures both the plaintiff and a third party, although in different ways").

Applying this precedent, Judge Varholak evaluated whether Plaintiffs have standing to challenge (1) excessive RK&A fees; (2) imprudent retention of the Active Suite; and (3) imprudent retention of the Royce Fund. Judge Varholak determined that Plaintiffs established constitutional standing to challenge RK&A fees and imprudent

retention of the Active Suite because Plaintiffs (1) were subject to the recordkeeping fees and (2) had each invested in at least one of the funds in the Active Suite. (Doc. # 72 at 15–17.) Judge Varholak noted that whether Plaintiffs could adequately represent the interests of other parties with different injuries arising from the same course of action—*e.g.*, injuries arising from funds within the Active Suite that Plaintiffs did not invest in—was a question of class certification, not constitutional standing.[1] (*Id.*) Plaintiffs do not object to this portion of the Recommendation (Doc. # 73 at 2 n.3), and the Court sees no error in Judge Varholak's well-reasoned analysis.

Plaintiffs do object, however, to Judge Varholak's determination that Plaintiffs lack constitutional standing to challenge the Royce Fund. (*Id.* at 2–3.) Although Plaintiffs did not invest in the Royce Fund, they contend that they nevertheless have standing to challenge the Royce Fund "based on their injuries from investing in the Active Suite funds selected pursuant to the same challenged process." (*Id.* at 4.) Stated differently, Plaintiffs argue that they challenge Defendants' entire "investment monitoring process" and, as a result, have standing to challenge the Royce Fund. (*Id.* at 3.)

Having carefully reviewed *de novo* the Complaint and applicable case law, the Court is satisfied that it would reach the same conclusion as Judge Varholak that Plaintiffs have not adequately alleged an injury in fact with respect to the Royce Fund. Although Plaintiffs argue in their Objection that they broadly challenge Defendants'

---

[1] If a plaintiff has adequately alleged a concrete injury in fact, then it is an issue of class certification whether the plaintiff may properly represent class members whose injuries may be based on funds different than those in which plaintiff invested or suffered injuries. *See Kurtz*, 511 F. Supp. 3d at 1193; *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 567 (D. Minn. 2014).

entire "investment monitoring process," the allegations in the Complaint do not support such an expansive interpretation of Plaintiffs' claims. Rather, the allegations establish two distinct breach of fiduciary duty claims with respect to two allegedly imprudent investment offerings: the Active Suite and the Royce Fund. Aside from the conclusory allegation that "Defendants have saddled participants with additional objectively imprudent investment options," (Doc. # 1 at ¶ 82), there are no allegations connecting any alleged imprudence regarding the Royce Fund with other funds in the Plan. In other words, the Complaint alleges "breach related to an individual fund or funds," *Kurtz*, 511 F. Supp. 3d at 1193, rather than "a single practice by the defendant that injures both the plaintiff and a third party, although in different ways," *Barrett*, 2018 WL 3209108, at *4; *see also Santiago v. Univ. of Miami*, No. 1:20-cv-21784-GAYLES/LOUIS, 2021 WL 1173164, at *7 (S.D. Fla. Mar. 1, 2021) ("Beyond the bare assertion that Plan participants were harmed by the offering of underperforming investments, the Complaint does not explain how the offering of two funds in which they did not invest caused any of them a concrete injury.").

In *Barrett*, a case from this district, the court analyzed a complaint that similarly "d[id] not allege that all investment choices or some sensibly grouped subset were offered imprudently." 2018 WL 3209108, at *3. Rather, the complaint "allege[d] only that the Money Market Fund was an imprudent offering alongside the Retirement Trust." *Id.* The *Barrett* court held that the plaintiff lacked standing for his claim relating to the Money Market Fund because he "d[id] not allege a single practice as to the Money Market Fund that injured both him and Money Market Fund investors." *Id.* at *4. In this

case, Plaintiffs allege that the Royce Fund was an imprudent offering alongside the Active Suite, but Plaintiffs provide no non-conclusory allegations as to any practices that injured both them and the Royce Fund investors. In the absence of plausible allegations that Plaintiffs suffered "concrete injuries traceable to . . . . the **same** decisions or courses of conduct" with respect to Defendants' decision to retain the Royce Fund, Plaintiffs have not met the requirements for Article III standing. *Boley*, 36 F.4th at 132 (emphasis added).

Because the allegations concerning the Royce Fund are confined only to alleged imprudence involving the Royce Fund, the Court agrees with Judge Varholak that Plaintiffs do not adequately allege that any deficient monitoring of the Royce Fund affected other funds or the Plan as a whole. Plaintiffs did not invest in the Royce Fund and have not shown that they suffered a cognizable injury traceable to Defendants' allegedly imprudent conduct of retaining that fund. The Court therefore overrules Plaintiffs' objection and affirms Judge Varholak's conclusion that Plaintiffs lack constitutional standing to challenge the Royce Fund.

B.    **EXCESSIVE RK&A FEES**

Next, Plaintiffs object to Judge Varholak's determination that the Complaint fails to state a claim for breach of fiduciary duty relating to Defendants' allegedly deficient RK&A fees monitoring process. (Doc. # 73 at 4–6.) In cases where, as here, the claim is that RK&A fees were too high, "the way to plausibly plead a claim . . . is to identify similar plans offering the same services for less." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 279 (8th Cir. 2022). Judge Varholak found that the Complaint failed to

11

provide an apt comparison showing that the Plan's RK&A fees were higher than other plans because Plaintiffs "compare the *average* fee paid by the Plan over a five-year span to the fees paid by the comparator plans for just *one* selected year." (Doc. # 72 at 21). Given that the only provided comparison for RK&A fees is an inapt "apples-to-oranges" comparison, Judge Varholak concluded that the allegations were insufficient to create a plausible inference that Defendants' decision-making process was flawed. (*Id.* at 19–22); *see Matousek*, 51 F.4th at 279 ("[T]he key to stating a plausible excessive-fees claim is to make a like-for-like comparison."). Moreover, Judge Varholak determined that even if the court were to accept Plaintiffs' fee calculations, those calculations showed that the Plan's alleged fees for the year 2020 were on par with or lower than the fees paid by comparator plans for the same year and therefore the calculations failed to show that the Plan's fees were excessive.[2] (Doc. # 72 at 19–21.)

Plaintiffs object that Judge Varholak's reading of the Complaint "misconstrues the allegations and misapplies the pleading standard by purporting to resolve factual disputes about reasonable fees for the Plan." (Doc. # 73 at 5.) The Court disagrees. Nowhere does Judge Varholak purport to resolve a factual dispute, and Plaintiffs point to no example of any improper factual resolution. Plaintiffs' objection that Judge Varholak misconstrued their allegations is equally meritless. The Court has carefully reviewed the Complaint and finds that Judge Varholak accurately quoted and correctly

---

[2] To calculate the fees of other comparable plans, Plaintiffs assert that they used each plan's 2020 Form 5500 "or the most recently filed Form 5500 if 2020 is not available." (Doc. # 1 at ¶ 56 n.6.) Like Judge Varholak, the Court views these calculations in the light most favorable to Plaintiff for purposes of this analysis as an apt comparison for the year 2020, rather than as an inapt apples-to-oranges comparison of fees from different years.

analyzed the fee comparison provided by Plaintiffs. Applying *de novo* review, the Court concludes that Plaintiffs' provided comparison of the Plan's average fee over five years with the fees of other plans from a single year is inapt and insufficient for the Court to plausibly infer that the Plan's RK&A fees were excessive. *See Matousek*, 51 F.4th at 280 (affirming dismissal of a recordkeeping fees claim because "without a *meaningful* benchmark, the plaintiffs have not created a plausible inference that the decision-making process itself was flawed"); *see also Meiners v Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) ("[A] plaintiff must provide a sound basis for comparison—a meaningful benchmark.") The Court overrules Plaintiffs' objection and finds that the Complaint fails to state a claim for breach of fiduciary duty on the basis of excessive RK&A fees.

## C.    ACTIVE SUITE

Plaintiffs next object to Judge Varholak's conclusion that the Complaint fails to state a claim that Defendants breached their fiduciary duties by imprudently retaining the Active Suite. (Doc. # 73 at 6–10.)

Fiduciaries are under a continuing duty to conduct a regular review of their investment decisions and remove investments which have become improper to retain. *See Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). An ERISA fiduciary must discharge his responsibly "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters" would use. *Id.* (quoting 29 U.S.C. § 1104(a)(1)). Thus, to establish a claim for breach of the duty of prudence and failure to monitor, a plaintiff must allege facts plausibly establishing that no reasonable

13

fiduciary would have maintained the investment. It is insufficient to simply allege that an investment did poorly, and therefore a plaintiff was harmed. *See Kopp v. Klein*, 894 F.3d 214, 221 (5th Cir. 2018). Rather, a plaintiff "must allege facts to support the conclusion that the Defendants would have acted differently had they engaged in proper monitoring—and that an alternative course of action could have prevented the Plan's losses." *Id.*; *see also Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983) ("[T]he test of prudence . . . is one of conduct, and not a test of the result of the performance of the investment."). Courts, therefore, "focus on the process by which [the fiduciary] makes its decisions rather than the results of those decisions." *Braden*, 588 F.3d at 595. Because plaintiffs may lack information about a fiduciary's process before discovery, courts have held that "even when the alleged facts do not specifically address the process by which a Plan is managed, a fiduciary breach claim may still survive a motion to dismiss if the court can reasonably infer from circumstantial factual allegations that the process was flawed." *Kurtz*, 511 F. Supp. 3d at 1197; *see Braden*, 588 F.3d at 596.

In the instant case, Judge Varholak found that Plaintiffs make no direct factual allegations regarding Defendants' process for monitoring the Active Suite. (Doc. # 72 at 24.) Accordingly, Judge Varholak reviewed the Complaint to determine if there were sufficient circumstantial allegations for the court to infer that Defendants' process in retaining the Active Suite was flawed. (*Id.* at 24 n.12.) Plaintiffs object that Judge Varholak improperly "parsed" the Complaint piece by piece to determine whether each allegation, in isolation, is probable. (Doc. # 73 at 7.) Plaintiffs also argue that Judge

Varholak discredited or misread the Complaint's allegations and rejected reasonable inferences that should have been drawn in Plaintiffs' favor. (*Id.*) The Court disagrees.

First, Plaintiffs object to Judge Varholak's analysis regarding the Fidelity Freedom Index funds ("Index Suite"), which Plaintiffs allege is a "substantially less costly and less risky" comparable investment option also provided by the Plan. (Doc. # 1 at ¶ 61; Doc. # 73 at 8.) Plaintiffs object that the Recommendation "separated the Complaint's Index Suite allegations to dismiss them individually" and erred by not considering the Index Suite as a "control" or "baseline" for evaluating the Active Suite. (Doc. # 73 at 8–9.) The Court agrees with Judge Varholak's analysis regarding the Index Suite. Judge Varholak correctly noted that courts around the country have split on the question of whether the Index Suite, a passively managed fund, may serve as a "meaningful benchmark" for the Active Suite, an actively managed fund, given their different goals and strategies. (Doc. # 72 at 25); *see Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022) (observing that the Index Funds and Active Suite have "distinct goals and distinct strategies, making them inapt comparators"); *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (analogizing comparing an actively managed portfolio and a passively managed portfolio to "[c]omparing apples and oranges"). Nevertheless, Judge Varholak considered Plaintiffs' allegations regarding the Index Suite and found that the allegations do not plausibly establish that no reasonably fiduciary would have maintained the Active Suite in light of the Index Suite.

Reviewing the matter *de novo*, the Court agrees with Judge Varholak that the Index Suite allegations are insufficient for the Court to infer that Defendants' process in retaining the Active Suite was flawed. Although Plaintiffs allege that the Active Suite charged higher expense ratios than the Index Suite, Plaintiffs also acknowledge that more actively managed target date funds generally incur higher expense ratios because of the active management needed to manage those funds. (Doc. # 1 at ¶ 67); *see Smith*, 37 F.4th at 1169 (noting that "actively managed funds need to charge higher fees, because they must hire management teams to actively select investments to buy and sell, whereas index funds require less management and less upkeep"). Plaintiffs do not allege that offering an actively managed fund is *per se* imprudent, and, regardless, case law does not support such a position. *See Kurtz*, 511 F. Supp. 3d at 1200 (noting that many courts have concluded that choosing actively managed funds over passively managed funds is not a breach of fiduciary duty); *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)."). Likewise, although Plaintiffs allege that the "level of risk" incurred by the Active Suite is higher than the Index Suite, there is no requirement in ERISA that a fiduciary select only the least risky investment options. Rather, courts have held that "it is prudent to offer a range of reasonable investment options, including passive **and active** funds." *Smith*, 37 F.4th at 1167 (emphasis added); *see also id.* (observing that it is "possible, indeed likely, that the absence of any actively managed funds suited for risk-tolerant investors would be imprudent"). For these reasons, the Court finds that

Plaintiffs allegations comparing the expense ratio and risk of the Active Suite and the Index Suite are insufficient for the Court to infer that a reasonably prudent fiduciary would have refused to retain the Active Suite. *See Davis*, 960 F.3d at 486 (noting that fiduciaries are not required to pick the best performing fund or the lowest-cost fund); *Meiners*, 898 F.3d at 823–24 ("[T]he existence of a cheaper fund does not mean that a particular fund is too expensive *in the market generally* or that it is otherwise an imprudent choice.").

Next, Plaintiffs object that the Recommendation erred by rejecting Plaintiffs' allegations regarding investor reports and capital outflow based on its interpretation of the Morningstar Report. (Doc. # 73 at 8.) Plaintiffs cited the 2019 Morningstar Report in their Complaint and noted that there were $5.4 billion in net outflows from the Active Suite in 2018, as compared to $4.9 billion in net inflows to the Index Suite that same year. (Doc. # 1 at ¶ 78.) Judge Varholak considered the entirety of the Morningstar Report,[3] including information in the Report that the $5.4 billion in outflow "represents about 3% of the Active Suite's assets" and that the Index Suite lagged the Active Suite by roughly 38 basis points annually, on average, from 2009 to 2018. (Doc. # 72 at 29.) Further, Judge Varholak noted that the Morningstar Report ranked the Active Suite *higher* than the Index Suite. (*Id.* at 30.) Reviewing the matter *de novo*, the Court agrees with Judge Varholak that Plaintiffs' allegations regarding the Morningstar Report and

---

[3] Plaintiffs do not argue that it was improper for Judge Varholak to consider the entirety of the Morningstar Report. The Court may consider the full report, which is attached to Defendants' motion, because it is referred to in the Complaint and central to Plaintiffs' claims and Plaintiffs do not dispute its authenticity. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

other expert opinions are insufficient to create the inference that Defendants acted imprudently in retaining the Active Suite. *See Smith*, 37 F.4th at 1168 (reviewing the Morningstar Report and others and finding that "[n]othing in these reports suggests that the Freedom Funds' reputation was bad enough when viewed in the market as a whole that a prudent plan administrator should never have included them in the offerings or should have precipitously dumped them"). Although Plaintiffs argue that Judge Varholak "ignored" statements in the Morningstar Report and Reuters Report that would create an inference of imprudence, the Court disagrees and finds that when the Reports are considered *as a whole*, rather than cherrypicked for statements supporting Plaintiffs' position, the Reports simply do not create a plausible inference that the Active Suite's reputation was so poor that no reasonable fiduciary would have retained it.

Plaintiffs also object that the Recommendation "dismissed the allegations detailing the target date fund peer alternatives" that Plaintiffs alleged are other comparators to the Active Suite. (Doc. # 73 at 10.) The Court finds that Judge Varholak did not "dismiss" these allegations; rather, he carefully considered Plaintiffs' allegations regarding three- and five-year annualized returns as of the Fourth Quarter of 2015 for four of the five largest non-Fidelity managers in the TDF marketplace. (Doc. # 72 at 31.) Those allegations show that the Active Suite underperformed the other TDF funds by 1% to 3.5%. (Doc. # 1 at ¶ 80.) The Court agrees with the Recommendation that, even assuming these alternative funds may serve as meaningful benchmarks, the allegations are insufficient to show that Defendants engaged in an imprudent monitoring process. *See Birse v. CenturyLink, Inc.*, No. 17-cv-02872-CMA-NYW, 2019 WL 1292861, at *5

(D. Colo. Mar. 20, 2019) (concluding that alleged 2%-3% underperformance was insufficient to state a breach of fiduciary claim); *see also Smith*, 37 F.4th at 1167 (noting that "disappointing performance by itself does not conclusively point towards deficient decision making"); *Meiners*, 898 F.3d at 823 ("No authority requires a fiduciary to pick the best performing fund."). Further, several courts have held that a showing of short-term relative underperformance is insufficient to establish imprudent monitoring, in part because short term underperformance may be reasonably explained by market conditions and investment strategies. *See, e.g.*, *Patterson v. Morgan Stanley*, No. 16-cv-6568 (RJS), 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019) ("[T]he duty of prudence does not compel ERISA fiduciaries to reflexively jettison investment options in favor of the prior year's top performers . . . . [P]ast performance is no guarantee of future success."); *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016 ("[A] fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy.").

Lastly, Plaintiffs object that the Recommendation "dismissed" the Complaint's allegations describing the Active Suite's problematic underlying funds. (Doc. # 73 at 10.) The Court finds this argument to be without merit because the Recommendation adequately discussed and analyzed the allegations regarding the underlying funds. (Doc. # 72 at 33–34.) In their Complaint, Plaintiffs allege that the portfolio of the Active Suite is diversified among 32 underlying investment vehicles, 22 of which were deficient at the beginning of the class period for either lacking a five-year track record or for failing to outperform their respective benchmarks in the previous three- and five-year

periods. (Doc. # 1 at ¶¶ 68–71.) Again, the Court finds that these allegations are insufficient to sustain an imprudent monitoring claim because the Court must consider the portfolio as a whole, rather than parsing for individual subsets of funds within the Active Suite. *See Birse*, 2019 WL 1292861, at *3 ("Even if a claim is narrowly focused on one investment, the proper inquiry considers the entire portfolio."). Moreover, merely showing underperformance of certain funds is insufficient to create an inference that Defendants are liable for that underperformance due to deficient monitoring.

In sum, Plaintiffs argue that the Recommendation improperly parsed individual allegations rather than engaging in a "holistic review" of the Complaint. (Doc. # 73 at 11.) The Court disagrees and finds that Judge Varholak carefully and thoroughly evaluated Plaintiffs' allegations while considering the Complaint as a whole. Moreover, on *de novo* review, this Court has considered the Complaint as a whole and finds that the allegations do not give rise to an inference of breach of fiduciary duty with respect to Defendants' retention of the Active Suite. *See Meiners*, 898 F.3d at 824. The claim must therefore be dismissed.

**D.    BREACH OF THE DUTY OF LOYALTY**

ERISA requires that fiduciaries must act "for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). To state a claim for breach of the duty of loyalty, a complaint must allege "that a defendant's actions were for the purpose of providing benefits to himself or someone else—having that effect incidentally is not enough." *Kurtz*, 511 F. Supp. 3d at 1202.

Plaintiffs object to Judge Varholak's determination that the Complaint does not state a claim for breach of the duty of loyalty because there are no factual allegations that Defendants' actions were for the *purpose* of benefitting themselves or Fidelity. (Doc. # 73 at 10.) Plaintiffs identify no error; they simply cite to the Complaint and argue that the allegations plausibly show that Defendants' process failings "improperly benefitted" Fidelity. (*Id.*); (Doc. # 1 at ¶¶ 49–59, 76–77.) The Court has carefully reviewed the paragraphs cited by Plaintiffs and agrees with Judge Varholak that there are simply no factual allegations that Defendants' "operative motive was to further [their] own interest[s]," as required to show a breach of the fiduciary duty of loyalty. *Smith*, 37 F.4th at 1170 (quoting *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 40 (1st Cir. 2018)). The Complaint therefore fails to state a claim for breach of the duty of loyalty. Plaintiffs' objection is overruled.

## E.   DERIVATIVE CLAIMS

Finally, Plaintiffs object to Judge Varholak's recommended dismissal of the Derivative Claims. (Doc. # 73 at 10.) Plaintiffs argue that "[s]ince the primary claims are well-pled, the Derivative Claims should be sustained." (*Id.*) For reasons already stated, the Court finds that the primary claims are not well-pled. The Derivative Claims must therefore be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- The January 31, 2023 Recommendation of United States Magistrate Judge (Doc. # 72) is AFFIRMED and ADOPTED as an Order of this Court;

- Plaintiffs' Objection (Doc. # 73) is OVERRULED; and

- Defendants' Motion to Dismiss (Doc. # 30) is GRANTED.

- Accordingly, Plaintiffs' Complaint (Doc. # 1) is DISMISSED WITHOUT PREJUDICE.[4] It is

- FURTHER ORDERED that Plaintiffs shall have fourteen (14) days from the date of this Order to file an amended complaint. If Plaintiffs fail to file an amended complaint, this case will be dismissed with prejudice.

DATED:  March 27, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge

---

[4] With respect to Plaintiffs' breach of fiduciary duty claim relating to the Royce Fund, dismissal must be without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (holding that a dismissal for lack of standing is jurisdictional and must be without prejudice). The Court further finds that dismissal without prejudice of Plaintiffs' other claims is appropriate because Plaintiffs have not yet amended their Complaint and the Court cannot say with certainty that amendment would be futile. *See Foman v. Davis*, 371 U.S. 179, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (acknowledging that Fed. R. Civ. P. 15 is intended to provide litigants the maximum opportunity for each claim to be decided on the merits rather than on procedural niceties).